IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN
AND FOR LEON COUNTY,
FLORIDA

**THERESA BENDER, as Bankruptcy
Trustee for Abdul Alansari, and
ABDUL ALANSARI,**

     **Plaintiffs,**

**v.**

     **CASE NO.: 2006-CA0574
CIVIL DIVISION—JUDGE FRANCIS**

**TROPIC STAR SEAFOOD, INC.,**

     **Defendant.**

_____/

## SECOND AMENDED COMPLAINT

Plaintiffs sue the Defendant, Tropic Star Seafood, Inc., and state:

## JURISDICTIONAL STATEMENT

1.     This action for monetary damages, for declaratory and injunctive relief, and for other equitable and ancillary relief is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq., and 42 U.S.C. § 1981a (hereinafter Title VII); 42 U.S.C. § 1981; under the Florida Civil Rights Act of 1992, §§ 760.01-11, Florida Statutes; under the Florida Private Whistleblower Act, §§ 448.101-105, Florida Statutes; and under §440.205 of the Workers Compensation Act.

2.     Plaintiff Abdul Alansari ("Plaintiff") is a U.S. citizen and a resident of Leon County, Florida; Theresa Bender is the bankruptcy trustee in Alansari's bankruptcy proceeding in the Northern District of Florida.

3.     Defendant Tropic Star Seafood, Inc. ("Defendant") is a corporation

authorized to do business in the State of Florida and Leon County.

4.     At all relevant times, Defendant has continuously been an employer within the meaning of Title VII.

5.     Defendant is an "employer" as that term is defined under §448.101 and §440.02, Florida Statutes.

## CONDITIONS PRECEDENT

6.     Plaintiff Alansari filed timely charges of discrimination with the Equal Employment Opportunity Commission and Florida Commission on Human Relations (hereinafter "FCHR") and otherwise fulfilled all prerequisites to bringing this action.

7.     The FCHR determined that reasonable cause exists to believe that Plaintiff was subjected to racial and religious discrimination.

## GENERAL ALLEGATIONS

8.     Defendant is a seafood distributor with its headquarters in Lakeland.

9.     At all times material to this action, Defendant had no formal internal complaint or grievance policies and procedures.

10.     Plaintiff was hired as a driver in August of 2004.

11.     Jason Jemegan ("Jemegan")was a manager in the Lakeland office.

12.     Plaintiff had daily contact with Jemegan by phone.

13.     Defendant maintains a Tallahassee branch office.

14.     When Plaintiff was hired the Tallahassee office was managed by David Thomas.

15.     The other Tallahassee drivers were Don Hamm, Corker Wimberly and Anthony Chambers.

2

16.     Wimberly was Plaintiff's direct supervisor.

17.     Plaintiff has a commercial drivers' license (CDL) and was assigned to drive one of Defendant's trucks.

18.     Plaintiff's job duties included keeping inventory, loading and unloading frozen seafood and driving routes from Tallahassee to Mobile and Jacksonville.

19.     Plaintiff was typically at the Tallahassee warehouse between 4:00 a.m. and 6:00 a.m. where he worked with the other drivers loading frozen seafood.

## I.     RACE AND RELIGIOUS DISCRIMINATION

20.     Plaintiff is a Sunni Muslim.

21.     Plaintiff was the only non-Christian employee in the company.

22.     All of the employees in the Tallahassee warehouse are black but they made racial and religious comments about Plaintiff.

23.     The black employees criticized Plaintiff for not conforming to black stereotypes about food and religion.

24.     For example, when Plaintiff took a delivery to Newmarket, Wimberly told the customer there that since Plaintiff is "Muslim, better give him seafood."

25.     Wimberly said things like "you can't eat this seafood because it has pork in it."

26.     The drivers in the Tallahassee warehouse pressured Plaintiff to convert to Christianity and attend a black Baptist church.

27.     The drivers said things like, "come to church, Jesus will save you and you'll feel better."

3

28.     Another employee said "don't talk about your religion."

29.     Chambers, who is known as "The Deacon," pressured Plaintiff frequently.

30.     Chambers played the Christian radio station in the Tallahassee warehouse.

31.     One day Chambers told Plaintiff he was going to be on the Christian radio
station because he met a woman at the station who was "in the spirit."

32.     Chambers said Plaintiff needed to "be in the spirit, and then you can keep
your job and you won't have the problems you have now, you'll be protected by the
Cloak."        -

33.     Other examples of Chambers' comments include, but are not limited to:

    (a)     "what's up with the Muslim stuff"

    (b)     "come to church"

    (c)     "stop selling papers and bean pies" (a reference to the Nation of Islam,
            whose adherents sometimes sell newspapers and bean pies on the
            street).

34.     Plaintiff reported the harassment to Thomas and the comments
temporarily stopped.

35.     Thomas did not report the race and religious comments to his superiors,
and they started up again.

## II.     SAFETY VIOLATIONS

36.     Defendant directs its employees to lie to evade Department of
Transportation (DOT) regulations.

37.     Plaintiff's truck was the oldest truck in Defendant's fleet.          .

4

38. Defendant did not promptly repair the truck.

39. Plaintiff reported constant mechanical problems with the company's truck but Defendant told him to lighten up or he would get fired.

40. When Thomas managed the Tallahassee division he told Plaintiff to take the truck to the shop for repairs.

41. A few months after Plaintiff was hired, Jemegan had a meeting with Plaintiff and the other drivers at an Applebee's restaurant to announce that Thomas had been fired because his repair costs were too high.

42. Jemegan said Thomas spent more money on repairs for the Tallahassee fleet than Jemegan did for all of the trucks in Lakeland.

43. After Thomas was fired Defendant pressured Plaintiff to drive the truck without making any repairs.

44. Hamm told Plaintiff to fix problems himself.

45. On December 7, 2004, Plaintiff was stopped by a state trooper in Baldwin County, Alabama.

46. The trooper said he had noticed faulty equipment on the truck before but had never stopped it.

47. The trooper told Plaintiff that Defendant had a long history of safety problems because of bad equipment.

48. The trooper told Plaintiff he could finish driving his route and said he would make sure the Lakeland office received a copy of the DOT report.

49. Once Defendant's Lakeland office was warned about its safety record by the Alabama state trooper, its attitude toward Plaintiff became more hostile.

5

50.     On January 11, 2005 Plaintiff's truck was cited for not having tire reflectors.

51.     Wimberly told Plaintiff the company would not install reflectors.

52.     Wimberly instructed Plaintiff to lie to inspectors if he was stopped by an inspector or by highway patrol.

53.     Wimberly said that in the future Plaintiff should tell the inspector that he was on the way to the shop buy reflectors.

54.     When Plaintiff was driving back from Pensacola, he was stopped because of broken tail-lights.

55.     There was a short in the taillights because the fuse box was bad but Defendant would not repair it.

56.     Wimberly told Plaintiff to fix it himself with his own money.

57.     Wimberly told Plaintiff "we do things a certain way, and you need to get with the program. If you don't we don't need you."

58.     Sometimes Plaintiff had to stop and sleep until morning so he didn't get pulled over at night because of the faulty lights.

59.     When Plaintiff stopped at a weigh station on the way to Jacksonville he was cited for having uneven headlights.

60.     Once Plaintiff used his own money to buy a light so he would not be stopped.

61.     When Plaintiff's truck needed a new muffler, Wimberly and Hamm tied the old muffler to the truck with a wire.

62.     On April 4, 2005 Plaintiff was stopped at a weigh station because exhaust

6

smoke was billowing out of the exhaust system.

63.     The vehicle was also cited for oil leaks.

64.     Water was coming through the cab of the truck, soaking documents in the front seat.

65.     On one occasion Plaintiff's truck broke down at 1:30 a.m. after it had been in service for twelve hours.

66.     Jemegan wrote Plaintiff up because the truck broke down.

67.     Jemegan tried to charge Plaintiff with the cost of repairing the truck.

68.     On May 5, 2005 Plaintiff's truck was cited for two violations, including a cracked windshield.

69.     Wimberly said if Plaintiff kept getting stopped he would be fired.

70.     Other drivers were not threatened or terminated even when they were arrested or in collisions that damaged Defendant's trucks.

71.     For example, Wimberly crashed a truck but was not terminated, disciplined or asked to pay for the repairs himself.

72.     While driving one of Defendant's trucks, Hamm was arrested for soliciting a prostitute and resisting arrest.

73.     Wimberly did not report Hamm's arrest to the company.

74.     Hamm lost his drivers' license but kept his job.

75.     Plaintiff was required to drive Hamm on his routes.

76.     Hamm told Plaintiff he was observing Plaintiff's driving skills and that he would be fired if Hamm thought Plaintiff's skills did not pass the test.

## III.     HOURS OF SERVICE

77.    According to federal regulations Plaintiff could only drive a maximum of eleven hours.

78.    Plaintiff was required to stop for at least a ten-hour break after eleven hours in service.

79.    Plaintiff regularly went over the federal Department of Transportation regulations for hours-of-service.

80.    When Plaintiff complained about working beyond the hours-of-service limitation, Defendant told Plaintiff his options were to work until the truck was unloaded or lose his job.

81.    To avoid the limitation on the number of hours a driver can drive without stopping, Defendant told Plaintiff only to count time driving the highway.

82.    Defendant advised Plaintiff not to count time spent loading or unloading the seafood and to clock out after he reached his destination.

83.    Defendant told Plaintiff to unload the seafood and drive back to Tallahassee off the clock.

84.    As long as a driver is within 200 air miles of his destination he is not required to keep a log book.

85.    When Plaintiff drove to Pensacola the length of the trip was over 200 air miles.

86.    Defendant told Plaintiff that if he was stopped by a state trooper and he did not have a log book, to claim that he was lost and did not know he had exceeded the 200 mile limit.

87.    After being stopped by the state trooper in Alabama Plaintiff kept a log

book.

88.     Defendant would not send Plaintiff's log book to Lakeland because the book would reflect the stops Plaintiff made.

89.     Defendant told Plaintiff to falsify his time records in the drivers' log book.

90.     Plaintiff refused to change the time records.

91.     Wimberly said to Plaintiff "you're fucking up, I'll get a white boy to take your place and give him the keys and locks."

92.     Hamm said the same thing, telling Plaintiff to "tighten up, we already have a white boy to replace you."

93.     Wimberly and Hamm told Plaintiff never to call the company after hours because there would be a record of the phone call and it could be used to reconstruct the real number of hours Plaintiff spent on the road.

## IV.     WORKERS' COMPENSATION RETALIATION

94.     On May 7, 2005 Plaintiff slipped on a wet floor while making a delivery to Publix, injuring his right knee.

95.     On June 3, 2005 Plaintiff slipped on a wet surface in a restaurant, falling backwards onto his back.

96.     After the June 3 injury Plaintiff experienced pain in his neck, back and left knee.

97.     When Plaintiff returned to Tallahassee he sought treatment at Patients First Health Clinic, an outpatient clinic.

98.     While Plaintiff waited in the reception area, Corker Wimberly called Plaintiff on his cell phone and told him Defendant would not pay for Plaintiff's workers'

9

compensation injury.

99.    David Hicks, Defendant's Vice President, called Patients First Health Care and told the receptionist that Defendant would not pay for Plaintiff's treatment.

100.    A receptionist at Patients' First called David Hicks to inform him that Plaintiff's injury was work-related and would be reported to Defendant's workers' compensation insurance carrier.

101.    Hicks hung up on the receptionist three times.

102.    Wimberly went to Patients First and told the doctor on call that Plaintiff would need to use his personal insurance to pay for the visit—not the company's workers' compensation insurance.

103.    The physician at Patients First Health Care told Wimberly it was illegal for the clinic to bill to Plaintiff's personal insurance rather than to Defendant's workers' compensation carrier.

104.    Wimberly told Plaintiff "we can't keep you around because you keep getting hurt."

105.    Wimberly said David Hicks told him that he could not keep Plaintiff as a driver because his injuries cost Defendant money.

106.    Wimberly told Plaintiff he could not sue Defendant because it was a private company.

107.    Defendant terminated Plaintiff's employment on June 14, 2005.

108.    Plaintiff was replaced by a white driver.

109.    Defendant alleged that Plaintiff's negligence cost the company in excess of $1000 in repairs and service charges.

131.   Plaintiff is Muslim and therefore a member of a protected class within the meaning of applicable law.

132.   The disparate treatment, discrimination, and harassment described herein were based on Plaintiff's religion and negatively affected the terms, conditions, and privileges of his employment.

133.   Plaintiff has suffered damages because of the Defendant's actions.

## COUNT III
## TITLE VII (42 U.S.C. § 2000e, ET SEQ., 42 U.S.C. § 1981a)
## RETALIATION

134.   The Plaintiff realleges Paragraphs 1 through 123.

135.   The foregoing actions of Defendant constitute retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended.

136.   The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose discrimination and harassment and to participate in actions calculated to redress these grievances.

137.   Plaintiff has suffered damages because of Defendant's actions.

## COUNT IV - FLORIDA CIVIL RIGHTS ACT OF 1992
## CHAPTER 760, FLORIDA STATUTES
## RACE DISCRIMINATION

138.   The Plaintiff realleges Paragraphs 1 through 123.

139.   The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his race in violation of the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla.Stat.

140.   Plaintiff is African-American and is therefore a member of a protected class within the meaning of applicable law.

13

110. The repair records reveal several significantly higher individual repairs from both before and after Plaintiff's discharge - most notably a $5,009.58 engine rebuild on June 30, 2005.

111. Hamm, a black Christian, was not terminated for gross and criminal, misconduct involving the use of company property (solicitation of prostitution and resisting arrest).

112. Kerry Cline, a white, non-Muslim driver for Defendant, first rear-ended another vehicle with a company truck in June 2004 and was found to be at fault, but no action was taken at that time against Cline after the 2004 accident.

113. Cline was warned that the next accident he caused would result in termination.

114. Cline again caused a collision with another vehicle resulting in damage to that vehicle in August 2004 and was then terminated.

115. Henry Nieuwenhuis, another white, non-Muslim driver for Defendant, collided with and damaged the portico of a customer's building with a company truck while making deliveries in June 2004.

116. No action was taken against Nieuwenhuis for the June 2004 accident.

117. Nieuwenhuis then left the back of his truck unlocked in December 2004.

118. Eighty-seven pounds of product intended for five different customers was stolen from Nieuwenhuis' truck.

119. After the theft incident, Coats terminated Nieuwenhuis.

120. Non-Muslim employees were not terminated for equal or greater offenses.

121. White employees were not terminated for equal or greater offenses.

11

122.    Defendant's conduct was willful, wanton, malicious and deliberately in violation of law.

123.    Plaintiff has found it necessary to retain counsel to vindicate his rights in this matter and is owed a reasonable attorneys fee.

## COUNT I
## TITLE VII 42 U.S.C. § 2000e, ET SEQ. AND 42 U.S.C. § 1981a
## and 42 U.S.C. § 1981
## RACE DISCRIMINATION

124.    Plaintiff realleges Paragraphs 1 through 123.

125.    The foregoing actions of Defendant constitute discrimination and harassment against Plaintiff based upon his race in violation of Title VII of the Civil Rights Act of 1964, as amended, and Title 42, § 1981.

126.    Plaintiff is African-American and therefore a member of a protected class within the meaning of applicable law.

127.    The disparate treatment, discrimination, and harassment described herein were based on Plaintiff's race and negatively affected the terms, conditions, and privileges of his employment.

128.    Plaintiff has suffered damages because of the Defendant's actions.

## COUNT II

## TITLE VII 42 U.S.C. § 2000e, ET SEQ. AND 42 U.S.C. § 1981a
## RELIGIOUS DISCRIMINATION

129.    Plaintiff realleges Paragraphs 1 through 123.

130.    The foregoing actions of Defendant constitute discrimination and harassment against Plaintiff based upon his religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, as amended.

141.    The disparate treatment and discrimination described herein was based on Plaintiff's race and negatively affected the terms, conditions, and privileges of his employment.

142.    Plaintiff has suffered damages because of Defendant's actions.

## COUNT V - FLORIDA CIVIL RIGHTS ACT OF 1992
## CHAPTER 760, FLORIDA STATUTES
## RELIGIOUS DISCRIMINATION

143.    The Plaintiff realleges Paragraphs 1 through 123.

144.    The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his religion in violation of the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla.Stat.

145.    Plaintiff is Muslim and is therefore a member of a protected class within the meaning of applicable law.

146.    The disparate treatment and discrimination described herein was based on Plaintiff's religion and negatively affected the terms, conditions, and privileges of his employment.

147.    Plaintiff has suffered damages because of Defendant's actions.

## COUNT VI - FLORIDA CIVIL RIGHTS ACT OF 1992
## CHAPTER 760, FLORIDA STATUTES
## RETALIATION

148.    The Plaintiff realleges Paragraphs 1 through 123.

149.    The foregoing actions of Defendant constitute retaliation against Plaintiff in violation of the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla.Stat.

150.    The retaliation described herein was based on Plaintiff's exercise of rights ‚protected by law to resist and oppose sexual discrimination and to participate in actions

14

Case 4:07-cv-00438-SPM-WCS Document 5 Filed 10/31/07 Page 15 of 19

calculated to redress these grievances.

151. Plaintiff has suffered damages because of Defendant' actions.

## COUNT VII- § 448.101-105, FLA. STAT.
## FLORIDA PRIVATE WHISTLEBLOWER ACT
## RETALIATION

152. The Plaintiff realleges Paragraphs 1 through 123.

153. The foregoing actions of Defendant constitute retaliation against Plaintiff

in violation of the Florida Private Whistleblower Act, §440.101-105, Fla.Stat.

154. Plaintiff objected to and refused to participate in a practice which is in

violation of several laws, rules, and regulations.

155. Defendant terminated Plaintiff in retaliation for Plaintiff's refusal to

falsify time records, not conforming his religion to black stereotypes about food and

religion, operate unsafe vehicles and lie to inspectors and law enforcement.

156. Plaintiff has suffered damages because of the Defendant's actions.

## COUNT VIII- §§440.205, FLA. STAT.
## FLORIDA WORKERS' COMPENSATION ACT
## RETALIATION

157. The Plaintiff realleges Paragraphs 1 through 123.

158. The foregoing actions of Defendant constitute retaliation against Plaintiff

in violation of the Florida Workers' Compensation Act, §440.205, Fla.Stat.

159. Defendant's actions included discharging, threatening to discharge,

intimidating, or coercing Plaintiff because of his valid claim for compensation or attempt

to claim compensation under the Workers' Compensation Law.

15

160.    Defendant terminated Plaintiff in retaliation for his workers' compensation claim.

161.    Plaintiff has suffered damages because of the Defendant's actions.

### Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    judgment against Defendant Tropic Star Seafood and for Plaintiff awarding punitive and compensatory damages against Defendant for the Defendant's violations of law enumerated herein;

(c)    judgment against Defendant and for Plaintiff permanently enjoining Defendant Tropic Star Seafood from future violations of law enumerated herein and remedying all past and future lost income, raises, and other benefits of which Plaintiff has been unlawfully deprived;

(d)    prejudgment interest;

(e)    judgment against Defendant Tropic Star Seafood and for Plaintiff awarding Plaintiff his attorneys' fees and costs; and

(f)    all equitable relief that is allowed by law.

### Jury Demand

Plaintiff demands trial by jury on all issues so triable.


Respectfully submitted,

Melissa Horwitz, FL Bar No 017333

Richard E. Johnson, FL Bar No 858323

LAW OFFICES OF RICHARD E. JOHNSON
314 West Jefferson Street
Tallahassee, Florida 32301
Telephone: (850) 425-1997
Facsimile: (850) 561-0836

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a that a true and correct copy of the foregoing has

been furnished by U. S. Mail to: Andrea Teves-Smith, Esquire and Joshua Brown,

Esquire, Peterson & Myers, P.A., PO Box 24628, Lakeland Florida 33802-4628, this 17th

day of September 2007.

Melissa Horwitz

17

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

ABDUL ALANSARI,

      Plaintiff,               Case No.: 2006-CA0574

v.

TROPIC STAR SEAFOOD,

      Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Defendant, TROPIC STAR SEAFOOD, by and through the undersigned attorneys, files its Response to Plaintiff's Motion for Leave to Amend, and states:

1.    In its Order Granting in Part Plaintiff's Motion to Compel, the Court required the Defendant to respond within 20 days of the filing of the Plaintiff's Motion for Leave to Amend Complaint and state whether it has any objection to the Motion.

2.    Defendant has no objection to the C ourt granting the Plaintiff leave to file his Second Amended Complaint. However, Defendant reserves all rights and defenses it may have to the Second Amended Complaint, under state or federal law.

PETERSON & MYERS, P.A.

By:                                          

ANDREA REEVES SMITH
Florida Bar No. 0028861
Post Office Box 24628
Lakeland, Florida 33802-4628
(863) 683-6511
Attorneys for Defendant

1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished

via regular U.S. mail, on this ___ day of October, 2007, to Melissa Horwitz, 314 West

Jefferson Street, Tallahassee, Florida 32301.

Andrea Reves Smith